NEWMAN, Circuit Judge,
dissenting.
I would reverse the district court’s judgment and hold that Sunovion’s clinical trial does not constitute an invalidating “public use” of Dey’s invention. There are no facts to be found, no debate as to how the trials were conducted. No sound reason appears for remanding for findings or trial, when the matter is readily resolved on *1361 undisputed facts. Nor is there any reason for casting judicial doubt on the standard confidentiality procedures of clinical trials, at this late date of decades of established practice.
It is not disputed that the patients who participated in the trial were strictly limited by Sunovion’s policies that prevented dissemination of drug samples and enforced confidentiality on the administrators of the trial. Although the patients were necessarily told the identity of the active ingredient, the specific formulation and related details were not disclosed to the patients. Nor was the information published to the public, nor used outside of the rigorous controls of FDA regulations of clinical trials. There are no disputed facts, and no facts requiring finding or that could be found to show that these trials were a public use. The issue requires resolution, not perpetuation. From the court’s decision to remand, I respectfully dissent.
The patent statute, 35 U.S.C. § 102(b) (2006), bars a patent on an invention in “public use” more than one year before the date of the patent application:
§ 102 A person shall be entitled to a patent unless—
* * *
(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States ...
“A bar under § 102(b) arises where, before the critical date, the invention is in public use and ready for patenting.” Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1379 (Fed.Cir.2005). “The proper test for the public use prong of the § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited.” Id. at 1380. To determine whether the invention was “accessible to the public,” courts consider such factors as “the nature of the activity that occurred in public; the public access to and knowledge of the public use; whether there was any confidentiality obligation imposed on persons who observed the use; whether progress records or other indicia of experimental activity were kept; whether persons other than the inventor or acting for the inventor conducted the experiments; how many tests were conducted; the scale of the tests compared with commercial conditions; the length of the test period in comparison with tests of similar products; and whether payment was made for the product of the tests.” Allied Colloids Inc. v. Am. Cyanamid Co., 64 F.3d 1570, 1574 (Fed.Cir.1995). In short, a use “without limitation or restriction, or injunction of secrecy ... is public.” Egbert v. Lippmann, 104 U.S. 333, 336, 26 L.Ed. 755 (1881).
Sunovion’s Batch 3501A was in clinical trial before the critical date of Dey’s patents. Sunovion states that its clinical trials were a “public” use because the patients did not sign confidentiality agreements and knew that the active ingredient was the known drug formoterol. Sunovion stresses that a few drug doses were lost during the trial.
However, it was not disputed that the formulation of Sunovion’s Batch 3501A was “confidential,” was “not available to the public,” and was not known to the patients in the trial. The clinical investigators were subject to strict written confidentiality agreements that prohibited the investigators from disclosing information designated by Sunovion as secret and any information the investigators reasonably believed was “secret, confidential, or proprietary.” Clinical Investigator Confidentiality Agreement, at 1, Sept. 21, 1999.
The trial subjects were only told the identity of the active ingredient and the *1362 dosage being tested, which were not novel aspects of Dey’s patents. The details of the formulation and stability of Batch 3501A — the subject of Dey’s patents — was not disclosed to the trial subjects. Having not received this information, the clinical patients were unable to disseminate Dey’s invention, even though they were not subject to written confidentiality restrictions.
Dey points out that Sunovion exercised great care to avoid dissemination of the test material itself. During the trial, Su-novion had a protocol expressly prohibiting dispensing trial medication to any person who was not a trial subject. The trial subjects were informed prior to their participation that all unused medication was to be returned to the investigator. Moreover, trial subjects were carefully selected, in part based on their ability to fill out logs accurately and create a precise record of their use of the medication during the study.
On these undisputed facts, it cannot be held that the trial was a “public use” pursuant to 35 U.S.C. § 102(b). As the panel majority observes, “courts have routinely rejected the argument that such an arrangement necessarily strips the trial of confidentiality protection or renders it accessible to the public,” maj. op. at. 1358. For instance, in Janssen Pharmaceutica v. Eon Labs Manufacturing, Inc., 134 Fed. Appx. 425, 431 (Fed.Cir.2005), this court similarly held that there was not public use where the clinical trial “was confidential and controlled by Janssen” even though “none of the subjects of the trials were bound by confidentiality restrictions.” See also Bayer Sobering Pharma AG v. Barr Labs., Inc., No. 05-CV-2308 (PGS), 2008 WL 628592, *38-42 (D.N.J. Mar. 3, 2008) (finding no public use even though “the human patients did not execute confidentiality agreements”); Eli Lilly & Co. v. Zenith Goldline Pharm., Inc., 364 F.Supp.2d 820, 873-75, 912-13 (S.D.Ind. 2005) (rejecting the contention that failing to execute a confidentiality agreement constituted a controlling factor in the public use inquiry), aff'd, 471 F.3d 1369, 1380-81 (Fed.Cir.2006); In re Omeprazole Patent Litig., 490 F.Supp.2d 381, 508 (S.D.N.Y. 2007) (“[T]he lack of a confidentiality agreement is not dispositive as a matter of law [under 35 U.S.C. § 102(b) ], especially where [the movant] has come forth with no evidence to demonstrate what material confidential information the patients were privy to.”), aff'd on other grounds, 536 F.3d 1361, 1372 (Fed.Cir.2008). These holdings are consistent with the policy of protecting the public’s justifiable reliance by “discouraging] the removal of inventions from the public domain which the public justifiably comes to believe are freely available.” Am. Seating Co. v. USSC Grp., 514 F.3d 1262, 1267 (Fed.Cir.2008). Confidential clinical trials subject to the restrictions of this protocol do not engender such public reliance.
My colleagues state that material facts are in dispute, and therefore that trial is necessary. However, the court fails to identify any controverted facts. The facts of the clinical trials are well-established in FDA records and are uncontested by the parties. We know the formulation and quantity of drug distributed; the number of trial participants; the terms of the investigators and participants’ participation agreements; the information disclosed to the trial participants; and the restrictions on drug use and distribution imposed by Sunovion. Moreover, both parties agree that Batch 3501A used in Study 50 falls within Dey’s patent claims. No pertinent fact remains at issue; the only question is the legal conclusion of whether these facts constitute a “public use” within the meaning of 35 U.S.C. § 102(b). ‘Whether a public use has occurred is a question of law.” Baxter Int’l, Inc. v. COBE Labs., Inc., 88 F.3d 1054, 1058 (Fed.Cir.1996).
*1363 My colleagues state we should not decide whether Sunovion’s clinical trial constitutes “public use” because Dey “did not ask us to direct the district court to enter judgment in its favor,” op. at 1360 n. 5. Dey’s primary argument to the district court was that “as a matter of law, Sunovion’s confidential 050 clinical trial does not constitute a public use of Dey’s invention.” Dey’s Mem. of Law in Opp’n to Sunovion’s Mot. for Summ. J. at 1. Dey fairly raised its legal argument to the district court, and Sunovion was given an opportunity to respond. The district court was thus free to enter summary judgment for either party. First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 114 (2d Cir.1999) (“[I]f a motion for summary judgment has been made, a district court may grant summary judgment to any party — including a nonmov-ant.”).
On appeal, Dey requested that this court “vacate or reverse” the district court’s judgment:
Whether the district court erred in holding that Defendant-Appellee’s clinical trial, conducted under confidentiality restriction’s by an alleged infringer, constituted a “public use” of Plaintiff-Appellants’ second patent family within the meaning of 35 U.S.C. § 102(b), and in invalidating the patents on that basis.
Statement of the Issue, Dey Br. at 3. We need go no further than to answer the legal question presented: On the uncontested facts, Sunovion’s clinical trial was not a “public use” within the meaning of 35 U.S.C. § 102(b).
On the undisputed facts, the legal question is readily answered. The invention claimed in Dey’s patent was not in “public use” in Sunovion’s clinical trials. I respectfully dissent from the court’s refusal to resolve the question, for there is nothing requiring further trial, whether to a jury or to the bench.